H. H. & M. E. EVERTSON *vs.* E. EVERTSON, executor, &c.

Where a guardian invested money belonging to the complainants, who were his wards, upon a bond and mortgage in his own name, and afterwards assigned such bond and mortgage as a collateral security for an antecedent debt due from himself, and subsequently died insolvent; *Held,* that the assignee of the bond and mortgage was not entitled to hold them as against the complainants, although he had no notice of their equitable right to the bond and mortgage at the time of the assignment; and that a payment to the assignee, by the mortgagor, after notice of the equitable rights of the complainants, would not protect him against their prior equity.

Where a guardian held a bond and mortgage in his own right, and had in his hands monies of his wards to the same amount to be invested for their benefit, and it was agreed between him and the mortgagor that the money of the infants should be substituted for that which was due to himself upon the bond and mortgage, and that those securities should remain to secure the payment of the money belonging to them; *Held,* that this was an equitable investment of the money of the infants upon the security of the bond and mortgage.

March 15.      WALTER EVERTSON, the father of the complainants, died in April, 1812, seized and possessed of real and personal estate to the value of $20,000. In November, 1810, he made his will, and appointed his wife and his father-in-law, together with his brother, George B. Evertson, his executors. By that will, the testator, after making a provision for his wife out of his personal property, in lieu of dower, directed his real estate to be sold, and the proceeds thereof, together with the residue of his personal property, to be put out at lawful interest, on good security, and the yearly interest applied towards the education and support of his children ; and that the principal should be divided between them as they arrived at twenty-one years of age. G. B. Evertson alone proved the will and assumed the testamentary guardianship of the complainants, the only children of the decedent. In 1829, G. B. Evertson died insolvent, without having settled his accounts, as the testamentary guardian of the complainants and as executor of their father's will, leaving a large balance due to them from him as such executor and guardian. Sometime previous to April, 1822, G. B. Evertson, J. Givan and

J. W. Stevens were jointly concerned as the owners and proprietors of the Dutchess Cotton Factory, and carried on the same as copartners; and Evertson and Givan afterwards sold out their interest in the factory to Stevens, and retired from the firm. Upon adjusting their accounts with him, a large balance was found due to each of the retiring partners. To secure the payment of a part of these balances, Stevens, on the 16th of April, 1822, executed a joint bond to them for $11,427, with interest; and further to secure the payment thereof, he executed to them a mortgage upon the machinery in the factory, in which bond and mortgage Givan was interested to the amount of $5000, and the residue of the debt belonged to Evertson. Stevens sold out his interest in the manufacturing establishment and the machinery to Dyett and Chapman, in the spring of 1823. The purchasers were desirous that a great part of the purchase money should remain on mortgage, but Evertson, being in want of his money to pay off a debt to the Manhattan Bank, would not consent to wait for the money due to him on the mortgage, given by Stevens on the machinery. He agreed, however, to accommodate the purchasers, by substituting $6000 of the money in his hands belonging to the estate of Walter Evertson, and to let it remain upon the mortgage until Henry, the eldest of the complainants should become of age, about eight years thereafter. It was accordingly arranged between the parties, that Chapman and Dyett, together with Stevens, should give a new bond to G. B. Evertson and J. Givan for $11,000, to secure the loan of the monies belonging to the estate of W. Evertson, and the $5000 due to Givan, and that the old bond and mortgage should remain as a collateral security for the payment of the monies for which the new bond was given. The new bond was accordingly given, on the first of May, 1823, and G. B. Evertson, instead of receiving the $6427 from Chapman and Dyett and paying back to them the $6000 belonging to the estate of his brother W. Evertson, received only the balance of $427, and substituted the $5000, belonging to the complainants, by retaining that amount of their money in his hands, and applying it for his own purposes. The old bond and mortgage were accordingly endorsed down

to the $11,000, of which $5000 belonged to Givan, and the residue to the estate of the complainants' father. And Chapman and Dyett at the same time added a schedule of some new articles of machinery to the mortgage, as a part thereof, and to increase the security; which schedule was also endorsed on the mortgage, and signed by them. The bonds and mortgage were afterwards frequently recognized by G. B. Evertson, both by his letters and by parol admissions and declarations, as a security for the money belonging to the estate of his deceased brother Walter ; and the interest thereon, as the principal means upon which the complainants were dependant for their support.

In the latter part of April, 1826, G. B. Evertson, being indebted to the defendant as the executrix of Nicholas Evertson, by a written assignment, annexed to the bonds and mortgage and other securities, and to a deed of lands from William Smith, assigned and transferred such bonds and mortgage and other securities, together with the land described in the deed from Smith, to the defendant, as such executrix, by way of collateral security for the monies so due to her, and without prejudice to her right to proceed against him to compel payment of her debt, notwithstanding the assignment. In the answer of the defendant, she denied notice of the complainants' equitable interest in the debts secured by the bonds and mortgage. The cause was heard upon pleadings and proofs. And upon the hearing, the assignment to the defendant was produced by the counsel. But the papers which had been attached thereto at the time of its execution, and which formed a part thereof, had been detached from the assignment; and some of them were not produced, particularly the deed from Smith, and an agreement recited in the assignment as accompanying the bonds and mortgage. The vice chancellor decided and decreed that the complainants had an equity in the bonds and mortgage, as against the estate of J. B. Evertson, but that such equity was latent as regarded the defendant, and that she was therefore entitled to priority of payment out of the proceeds of the bonds and mortgage, and the other assigned property. And a reference was directed to a master to take an account of the

amount due to her, and the amount received by her, or which she might have received under the assignment, reserving all further questions and directions. From this decree, the complainants appealed to the chancellor.

*H. W. Warner,* for the complainants. The assignment, under which the defendant claims, is void. But even if it were good, yet the complainants' equity is both prior in point of time, and superior to that of the defendant. The decision of the vice chancellor turned upon an assumed distinction between an equitable *ownership* of the bonds and mortgage, and a latent equity in the complainants to have the benefit of those securities—a distinction without a difference. But if the complainants' equity were latent in a peculiar sense, which however is not admitted, still the defendant is not a bona fide purchaser for value, paid upon the faith of the assignment. She therefore took them, subject to such latent equity. The decree of the vice chancellor should be reversed, and a decree should be made establishing the complainants' prior equity as respects the bonds and mortgage.

*Edgar Evertson,* for the defendant. The bonds and mortgage were taken originally for the benefit of the assignor and in his name, and were assigned to the defendant in good faith, for a valuable consideration and without notice ; so that such bonds and mortgage cannot, in her hands, be subject to any latent equity of the appellants. The guardian of the appellants was not authorized to invest their money on personal securities ; he must therefore have merely reserved the bonds and mortgage for a time, as a fund from which to pay the interest for their support, as appears from the defendant's testimony.

There is a fatal variance between the complainants' bill and their evidence. The testimony of Stevens and Dyett could not be received to vary the terms or conditions of the securities to which they were parties. If the defendant had been informed of the latent equity of the appellants, she might have obtained other security for her debt instead of the bonds and mortgage in question ; as G. B. Evertson was in good circumstances at the time of the assignment.

THE CHANCELLOR. For some reason which does not appear, a part of the papers originally annexed to the assignment to the defendant, as appears from the assignment itself, have been detached therefrom, and are not produced. One of the papers thus withheld appears to be an agreement which accompanied the bond and mortgage. It is impossible, therefore, for the court to determine the question whether there was any thing upon the face of the papers annexed to the assignment, and forming a part thereof, sufficient to put the defendant on inquiry, and to operate as a good constructive notice of the complainants' right to the money secured by the bonds and mortgage. It is immaterial, however, whether the defendant had or had not actual or constructive notice of the complainants' equitable rights, at the time of the assignment to her. She took the assignment merely as a security for an antecedent debt, without any new consideration paid, and she relinquished no right or security which she before had or held against the debtor. There was not even an extension of the time of payment of the original debt stipulated for upon the assignment of these securities. But on the contrary, it appears, from the assignment itself, that her right to proceed and collect the debt from G. B. Evertson notwithstanding this assignment, was expressly reserved. The defendant is not a bona fide purchaser for a valuable consideration paid, within the meaning of the rule which protects a bona fide purchaser or mortgagee of the legal estate, against a prior equity of which he had no notice at the time he paid his purchase money, or advanced the monies or other property, for which the deed or mortgage was given, upon the faith and credit of the title thus obtained. (*Dickerson* v. *Tillinghast*, 4 *Paige's Rep.* 215. *Coddington* v. *Bay*, 20 *John. Rep.* 637.) It is not necessary, therefore, that I should examine the question as to the supposed distinction between a latent equity on the part of the obligors in the bond, and a latent equity in the complainants as the real owners of the debt itself; upon which supposed distinction the vice chancellor has based his decision. In the case of *Covell* v. *The Tradesman's Bank*, (1 *Paige's Rep.* 131,) I came to the conclusion that no such distinction existed where the subsequent assignee obtained nothing but an equity

under his assignment, but neither the legal estate, nor the legal right to sue in his own name; even where he had actually advanced his money upon the faith of such assignment.

There can be no doubt, in this case, as to the equitable right of the complainants to the money secured by this bond and mortgage, in the same manner and to the same extent as if their testamentary guardian, the executor of their father's estate, had actually taken their monies and loaned them out upon these securities, taking such securities in his own name. For every substantial purpose there was a new bond and mortgage given, and the monies of the complainants, to the extent of $6000, were substituted in the place of so much of G. B. Evertson's own debt which was secured by the original bond and mortgage of Stevens. It was not necessary that he should go through the formality of receiving the $6000 from Dyett and Chapman, and putting it into one pocket, and then taking the same amount of the complainant's money out of the other and handing it back, as the consideration for which the mortgage was to remain on the property and for which the new bond was given. There was a substantial re-execution of the mortgage at that time, and some additional machinery was actually included therein by the agreement of the parties. All the obligors in the new bond, and the purchasers of the machinery upon which the mortgage was a lien, had notice at that time that the $6000 actually belonged to the estate of the complainants' father, and not to George B. Evertson, in whose name the securities were taken. In such a case, if they should pay the mortgage monies to his assignee, knowing that he had assigned the securities in payment or as a security for his own debts and in violation of his trust, such payment would not, in this court, protect them from liability to the complainants. Upon every principle of justice, therefore, the rights of the infant cestuis que trust should be protected; for if the defendant had made use of even ordinary caution, by inquring either of Stevens, or of Chapman and Dyett, what was the real situation of these securities, she must have been informed that they belonged to the complainants and that G. B. Evertson had no right to

transfer them to her as a collateral security for his own debts.

The decree of the vice chancellor must be reversed, with costs. And a decree must be entered declaring that the complainants are entitled to the monies secured by these bonds and the mortgage, or so much thereof as it shall appear was due from G. B. Evertson to the complainants, at the time of his death, on account of the estate of their father. A reference must be directed to ascertain the amount thus due ; or at least so far as is necessary to determine that an indebtedness existed to the extent of these securities and the interest thereon from the time when the interest was last paid to G. B. Evertson, or for their benefit ; and also to ascertain what has been received by the defendant, and what is still due on the bonds and mortgage. The master is also to compute and allow interest, as shall be just. And all further questions and directions are to be resvered until the coming in of the master's report ; including the question of costs, other than the costs of this appeal.