PANCOAST and others *vs.* DUVAL and others.

1. A grantee of land by a conveyance made subsequently to a mortgage which the mortgagee had neglected to have recorded, which conveyance was claimed to have been in payment of a pre-existing debt, *held* not to have been a *bona fide* purchaser, nor a purchaser for valuable consideration, within the meaning of the " act to register mortgages," so as to give him a preference over the prior unregistered mortgage.

2. The holder of a second mortgage upon part of the premises embraced in a first mortgage, upon the remaining part whereof another holds a second mortgage, is entitled to have the two parcels sold separately, under proceedings to foreclose the first mortgage, where it can be done without prejudice to the rights of the complainant. If so sold, the proceeds of the sale of each parcel must pay their due proportion of the amount due on the first mortgage, and costs.

Bill to foreclose. On final hearing, on pleadings and proofs.

*Mr. F. B. Levis*, for complainants.

*Mr. F. Voorhees*, for Lydia and Emma Shreve.

*Mr. C. Ewan Merritt*, for Peter S. Duval.

THE CHANCELLOR.

Benjamin F. Aumack and others conveyed to Stephen C. Duval, by deed dated May 3d, 1871, a lot of land of about twelve acres, in the township of Dover, in Ocean county.

On the same day, the grantee mortgaged the property to the complainants, to secure the payment of $600, with interest. The mortgage was recorded on the 18th of August following. On the 4th of January, 1873, Stephen C. Duval and his wife mortgaged six acres and sixty-nine one-hundredths of an acre of the tract to Dr. Jonathan R. Shreve, to secure the payment of $3000, with interest. Dr. Shreve subsequently, but at what time does not appear, assigned this mortgage to Benjamin F. Shreve, who, on the 19th of August, 1873, assigned it to the defendant, John Wardell Brown, by whom it is still held. On the 1st of November, 1872, Stephen C. Duval and his wife mortgaged the other part of the property to the defendants, Lydia S. and Emma Shreve, to secure the payment of $2850. That mortgage was dated November 1st, 1872, was acknowledged January 4th, 1873, but was not recorded until the 10th of November, in the last mentioned year. Stephen C. Duval and his wife conveyed the entire lot of about twelve acres, to Peter S. Duval, the father of the former, by deed dated, acknowledged, and recorded, on the 3d of September, 1873.

The questions raised in this suit are between the defendants, Lydia and Emma Shreve, and Peter S. Duval. They alone, have answered. Lydia and Emma Shreve insist that their mortgage is a valid lien on the property thereby mortgaged; while Peter S. Duval, on the other hand, insists that it has no validity as an encumbrance thereon, seeing that it was not recorded at the time of the delivery of the deed to him, and that, as he alleges, he had, at that time, no notice of its existence. Lydia and Emma Shreve claim, also, as against the Brown mortgage, that the mortgaged premises should be sold in two parcels; one, the part covered by their mortgage, and the other, the part covered by the Brown mortgage; and that after paying the complainants' mortgage out of the proceeds of the sale of the parcels by proportionable contribution of the proceeds, the balance which may remain of the proceeds of the part mortgaged to them, or so much

thereof as may be necessary for the purpose, should be paid over to them, in or towards satisfaction of their mortgage.

There is no direct evidence that Peter S. Duval had notice of the mortgage of Lydia and Emma Shreve, when he took his deed. He swears that he had no notice of it. But the provision of the "act to register mortgages" is, that mortgages executed after the day mentioned in the act, while valid and operative as between the parties and their heirs, shall be void and of no effect as against a subsequent judgment creditor, or *bona fide* purchaser, or mortgagee, for valuable consideration, not having notice thereof, unless the mortgage be acknowledged or proved and recorded. Is Peter S. Duval a *bona fide* purchaser for valuable consideration, without notice? There seems to be great reason to doubt whether the conveyance from his son to him was, in any respect, *bona fide*, and whether it was not designed for the benefit of the latter, and to defeat the mortgage to Lydia and Emma Shreve. Peter S. Duval, in his testimomy, says, in answer to the question whether his son, Stephen C. Duval, was guilty of deceit in stating to him, as he testifies he did, at the time of the conveyance, that there were but two mortgages on the property, one for $600 and the other for $3000 : "I don't like the word 'deceive,' there, for he was innocent of it himself. What he knew, he had learned from Dr. Shreve, that Dr. Shreve had not used that mortgage (the mortgage to Lydia and Emma), and did not intend to use it." Dr. Shreve had an interest in the property, and Peter S. Duval knew it. He says he did not know whether it was to the extent of half of the property, or not, but he says that he took the deed for the property as well for his own benefit as his son's (Stephen C. Duval's), and that it was understood between him and Stephen that he held it to secure the debt of each of them from Dr. Shreve, $2000 to himself and $10,000 or $12,000 to his son. By this conveyance, they designed, therefore, to put Dr. Shreve's interest in the property, into the hands of Peter S. Duval, to secure debts due from Dr. Shreve to him and to the grantor. This convey-

ance appears to have been made to reach Dr. Shreve's interest alone. It was made by Stephen C. Duval, who was trustee for Dr. Shreve as to his interest, without his knowledge and in fraud of his rights, and Peter S. Duval was fully aware of the true character of the transaction. His language is: "I held it (the property) to secure the debt of each of us (his son Stephen and himself) from Dr. Shreve. Besides this due-bill (referring to a due-bill which had been given by Dr. Shreve to Stephen C. Duval, and by him transferred to Peter S. Duval,) I should think Dr. Shreve owed my son and me some $10,000 or $12,000. $2000 is all that is due to me, represented by the due-bill; all the rest of it is due to my son." Again, he says: "I would not have bought it if it had not been for the Dr. Shreve debt. I intended to take the deed and hold it until Dr. Shreve paid the debt due to me, and to my son." He made no investigation of the title, nor search as to encumbrances upon the property, until after the conveyance. I am satisfied, from the evidence, that he ought not to be regarded as a *bona fide* purchaser.

But further, Peter S. Duval, if he were a *bona fide* purchaser, is not a purchaser for valuable consideration. He claims that the consideration of the conveyance was the debt of $2000, with $1025 more due to him from his son, Stephen. The deed purports to be for the consideration of $1025 only. All this money was due to him, as he alleges, from Stephen, before the conveyance was made. He gave up no security for the conveyance. He did not deliver up to Stephen Dr. Shreve's due-bill for $2000, above mentioned. He testifies that he still holds it. Nor did he even give him a receipt for the consideration, or any part of it. He says the accounts between him and Stephen are still unsettled. He parted with nothing of value (indeed, he parted with nothing,) in consideration of the conveyance. The conveyance appears, as before suggested, to have been merely the means adopted by him and Stephen to obtain control of Dr. Shreve's interest in the property, for the benefit of Stephen. If he be considered a purchaser, he is not a purchaser for

valuable consideration. *Dickerson* v. *Tillinghast*, 4 *Paige* 215 ; *Coddington* v. *Bay*, 20 *Johns.* 637 ; *Evertson* v. *Evertson*, 5 *Paige* 644 ; *Westervelt* v. *Haff*, 2 *Sandf. Ch.* 98 ; *Mingus* v. *Condit*, 8 *C. E. Green* 313. He is, therefore, not within the protection of the act above referred to. The mortgage of Lydia and Emma Shreve is a valid encumbrance.

That mortgage is the second encumbrance upon the property which it covers, and the mortgagees are entitled to have the mortgaged premises sold in two parcels : one, the premises covered by their mortgage, and the other, those covered by the Brown mortgage ; provided it can be done without prejudice to the rights of the complainants. If the premises be so sold, the proceeds of the sale of each parcel must pay their due proportion of the amount due upon the complainants' mortgage, with their costs of this suit. *Hoy* v. *Bramhall*, 4 *C. E. Green* 564; *Mutual Life Ins. Co.* v. *Boughrum*, 9 *C. E. Green* 44.

There will be a reference to a master to ascertain and report the amount due on the mortgages, and whether the premises can be sold in parcels without prejudice to the rights of the complainants, to have the whole premises sold in one parcel, if necessary, in order to pay the money due them.