[*131]

*COVELL *v.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE TRADESMAN'S BANK, AND MULLINS.

C. held a single bill, or sealed note, against H. for $2,425, payable to himself in twelve months from the date with interest. C. borrowed of M. $100, and pledged this sealed note to him to secure the repayment, and indorsed his name in blank on the note. M. being indebted to the Tradesman's Bank in the sum of $2,600, agreed to transfer the note to the bank, as security for $1,000, part of the debt he owed the bank, provided the bank would advance to him the remainder of the note. The bank advanced the money, and M. indorsed his name in blank on the note, and delivered it to

the bank.  M. afterwards became insolvent, and never paid any part of the $1,000, or of the money advanced to him by the bank.  Soon after C. delivered the note to M., M. received a larger sum of money belonging to C. than the amount C. owed him.  The bank were ignorant of the right of C., and gave H. notice not to pay the note to any one except themselves.  C. gave notice to the bank of his title to the note, and demanded it from them. The bank refused to deliver C. the ·note.  Held, that C., having both the prior equity and the legal right, was entitled to the note.

Had the note been negotiable, and had it been taken by the bank in the usual course of business, the equity of the bank would have been equal to that of C.; and the legal right of the bank to collect the money due on the note in their own name would have prevailed over the prior equity of C.

*Aliter*, if the note, although negotiable, had been transferred to the bank merely as a security for an antecedent debt.

Where the equities of the parties are equal, the party who has the legal right will prevail.

If neither party has the legal right, the maxim *qui prior est in tempore, potior est in jure*, applies.

The assignee of a chose in action, who only obtains an equitable interest therein, and who must sue in the name of the original owner, is not protected against a prior equity.

1828.

Covell
v.
Tradesman's
Bank.

THE complainant held a single bill, or sealed note, against July 7th. T. and J. Hunt, for $2,425, payable to himself, in twelve months from date, with interest, and dated the 27th of September, 1826.  On the 19th of October, in the same year, he borrowed of the defendant Mullins, a broker, the sum of $1,000, and pledged the sealed note to secure the repayment, indorsing his name in blank on the note. Mullins gave him a receipt for the note, promising to return it when he should receive the $1,000.  On the 10th of November, 1826, Mullins being indebted to the Tradesman's Bank, about $2,600, went to the cashier pretending to be owner of the *note, and proposed to let the bank have it in security for $1,000 of that debt, provided the cashier would advance him the residue of the amount of the note in money.  The proposition was acceded to.  Mullins indorsed his name in blank on the note, delivered it to the cashier, and received the balance in money, which the cashier advanced for the bank, on the credit of the note, without any knowlege or suspicion of any right or claim

[*132]

on the part of the complainant or of any one else. The cashier had previously ascertained from the Hunts, that they justly owed the note to Covell, and that they intended to pay it when it became due. At the time the sealed note was received by the bank, the cashier took Mullins' note for the whole amount due from him, including the money then advanced; and the sealed note was taken as security for the payment. The cashier testified, that his object in taking Mullins' note was to insure the payment of interest every sixty days. Mullins has never paid any part of the $1,000, or of the advance to him. Soon after Covell left the sealed note in pledge to Mullins, the latter received a considerable sum of money for Covell, which, after deducting the $1000 and a previous loan, left $310 due from him to Covell; which balance still remains unpaid.

The bank gave notice to the Hunts of the assignment of the sealed note, and that they must not pay it to any one else. After Covell ascertained that the sealed note had been assigned by Mullins, he gave notice to the bank of his right, and applied by his counsel to have the note delivered up to him; which was refused. Since the commencement of this suit, by an arrangement between the parties, the injunction has been modified so far as to permit the money to be collected; and the same is now deposited in one of the banks of the city of New York, to abide the decision of this cause.

*P. Ruggles*, for the complainant:—The sealed note pledged by the complainant to Mullins, and by him transferred to the Tradesman's Bank, not being negotiable, went into the possession of the bank, subject to all the equities which existed between the complainant and Mullins. The [*133] *complainant's name being indorsed on the note, amounted to nothing more than an assignment as security for the $1000 borrowed from Mullins; and that sum having been received by Mullins, neither he, nor any person claiming under him, could hold the note as against the complainant. An as-

signee of a chose in action takes it subject to the same equity it was liable to in the hands of the assignor. (1 Mad. Ch. last ed. 547; 2 Vern. 692; id. 764; *Clute* v. *Robinson*, 2 John. R. 595; 1 John. Dig. 53; *Chamberlain* v. *Gorham*, 20 John R. 144; *Davies* v. *Austin*, 1 Ves. jun. 249; *Bank of Niagara* v. *M'Cracken*, 18 John. R. 493.) If the sealed note is to be considered as a pledge in the hands of Mullins, and as a chattel, he could make no disposition of it, not even to raise the money for which it was pledged, without giving reasonable notice to the complainant to redeem it. (*Hart* v. *Ten Eyck*, 2 John. Ch. R. 100; 1 Madd. Ch. 529.) The defendants having refused to deliver the note to the complainant when demanded, and after having notice of his rights, ought to pay him his costs.

*W. Slosson*, for the defendants.:—The defendants are entitled to all the protection of *bona fide* holders of the note. The complainant, by indorsing the note in blank, authorized the holder to fill it up, with an assignment of the whole interest direct to the Tradesman's Bank, or to any one else. The complainant having given this power, he must abide the consequences of a transfer to a *bona fide* purchaser. (*Lovell* v. *Evertson*, 11 John. R. 52; *Mitchell* v. *Culver*, 7 Cowen, 336, 337, and note.) After such a blank indorsement, the purchaser is not bound to look to any latent equity between the assignor and Mullins. (*Murray* v. *Lylburn*, 2 John. Ch. R. 443; *Livingston* v. *Dean*, Id. 480.) The principle is a fundamental one in equity, that where one puts it in the power of another to hold himself out as the absolute owner, he cannot set up, as against a *bona fide* purchaser, any latent equity not known to such purchaser. (*Niven* v. *Belknap*, 2 John. R. 589.) The assignee of choses in action is as much protected in equity as the purchaser of goods. The assignment of a sealed instrument may be in writing without seal, and even by *delivery merely. (*Prescott* v. *Hull*, 17 John. R. 284; *Briggs* v. *Dorr*, 19 John. R. 95; *Ford* v.

1828.

Covell
v.
Tradesman's
Bank.

[*134]

*Stewart*, 19 John. R. 342. The note, although under seal, was in every other respect a mere promissory note. All the parties so treated it. The complainant by indorsing the note in blank, is liable as upon a new note drawn by him. (Chitty on Bills, 184.)

THE CHANCELLOR :—In this case a gross fraud has been practiced by the defendant Mullins, and the question is, upon which of the two innocent parties to this suit must the loss fall? Although it is not distinctly stated in the pleadings and proofs, it seems to be understood by the parties that Mullins is insolvent. As to the $1,000 which was due from Mullins at the time he transferred the sealed note, there can be no hardship in the case, as respects the bank. They are, as to that sum, no worse off than they were before the note was received in security. The complainant is clearly entitled to that part of the proceeds of the sealed note. In relation to the sum of $1,425, which Mullins actually obtained in money from the bank by falsely and fraudulently pretending that he was the owner of the note, there is great hardship on both sides. As to the first sum, the complainant has not only the prior but the greater equity. The questions which arise in relation to the last sum, are: 1. Has either party the greater equity? 2. If the equities are equal, has either party the legal right? 3. If neither has the greater equity, or the legal right, which party has the prior equity?

The greater equity must prevail not only against a lesser equity which is prior in point of time, but is sometimes permitted to prevail even as against the legal right. If the note in question had been negotiable, and had been taken by the bank in due course of business, the equity of the bank to retain it in security for the money advanced, would be equal to the equity of the complainant to receive back his note from Mullins; and the legal right of the assignees to collect the money in their own name would prevail over the prior equity of the complainant.

But according to the decision of this court, and of the Court of Errors, in *Coddington* v. *Bay*, (5 John. Ch. R. 54, 20 John. R. 647, S. C.,) the bank would not *be entitled to retain the proceeds even of a negotiable note thus transferred to them, merely as a security for an antecedent debt. In this case, I cannot find any principle to support the position that the bank has any greater equity to have the money which was advanced on the security of this instrument repaid, than the complainant has to have his note returned to him, agreeably to the terms of his agreement with Mullins. Where the equities of the parties are equal, if either has the legal right, that must prevail; but if neither has a legal right to the subject or thing in controversy, the maxim, *qui prior est in tempore, portior est in jure,* applies.[1] (*Tourville* v. *Naish*, 3 P. Wms. 308.) It was on these principles, that, in England, if there were two *bona fide* mortgagees having equal equities, and the junior incumbrancer could obtain the legal estate by getting the assignment of an older mortgage, he could tack his junior mortgage thereto, and thus get a preference over the intermediate mortgage; but if there was still a fourth mortgage, older than either, outstanding in the hands of a third person, or if the legal estate was in the hands of trustees, all the subsequent mortgages must be satisfied according to their priority in point of time. (*Brace* v. *The Duchess of Marlborough*, 2 P. Wms. 491.) On the same

1828.

Covell
v.
Tradesman's
Bank.

[1] On this maxim depends the rights of property in treasure-trove, wrecks, *Legge* v. *Boyd*, 1 C. B. 92; E. C. L. R. 50, and derelects, id. Waifs and estrays, 1 Black. Com. 291; *Armory* v. *Delamere*, 1 Stra. 504; *Mortimer* v. *Cradock*, 7 Jur. 45. The law of primogeniture, 2 Black. Com. 83, 84. It is acted on in case of conflicting titles; see argument of Sir E. Sugden in *Cholmondeley* v. *Clinton*, 2 Meriv. 239; Broom's Maxims, 263 n. In assignments, and between incumbrancers and purchasers; *Foster* v. *Blackstone*, 1 Mylne & K. 297, 2 P. Wms. 491. In regard to the doctrine of tacking of mortgages, 3 Prest. Abs. tit. 274, 275; *Willoughby* v. *Willoughby*, 1 T. R. 773, 4. *M'Niel* v. *Cahil*, 2 Bligh. 228. See 4 Kent, 178, n. The law relative to patents and copyrights is altogether referable to this maxim. Broom's Maxims, 260, 272, and cases there cited.

1828.

Covell
v.
Tradesman's
Bank.

[*136]

principal, a negotiable note payable to bearer or indorsed in blank, which, by commercial usage, may be prosecuted in the name of the holder, if it is in the hands of an agent, or is stolen, or is lost by the owner, and by the improper act of the agent, thief or finder is put in circulation, and thus comes into the hands of a *bona fide* holder in the due course of business, the equal equity of such holder will enable him to retain it against the former owner; while, on the other hand, the assignee of a chose in action, who only obtains an equitable interest therein, and must sue in the name of the original owner, is not protected against a prior equity. (*Coles* v. *Jones*, 2 Vern. 692. *Norton* v. *Rose*, 2 Wash. R. 233. *Turton* v. *Benson*, 2 Vern. 764. *Livingston* v. *Hubbs*, 2 John. Ch. R. 512.) It will also be found on examination, that the case of *Redfearn* v. *Ferrier & Somervail*, (1 Dow. Parl. Rep. 50,) cited by Chancellor Kent, in *Murray* v. *Lylburn*, (2 John. Ch. R. 443,) was decided upon the principles above stated. In that case, a share in the Edinburgh Glass House *Company, which by the rules of the company could only be holden by a single individual, stood in the name of Stuart, but in fact it belonged to the firm of Stuart & Somervail. Their partnership was dissolved by the bankruptcy of Stuart; and after the dissolution, Stuart assigned the share on the books of the company to Redfearn, who had no notice of the equitable claim of Somervail. A question having arisen between Somervail and Redfearn, as to the right to the share, the agent of the company raised an action of *multiple poinding*, (a proceeding somewhat similar to our bill of interpleader,) to settle the rights of the parties. The Court of Sessions in Scotland decided against the rights of the assignee, but on appeal to the House of Lords, that decision was reversed. Not on the ground that the assignee of a chose in action was protected against a latent equity in a third person, because a share in a joint stock company is not a chose in action. It was evidently decided on the ground, that by the law of Scotland the assignment, inti-

mated on the books of the company, vested the legal interest and right to the stock in the assignee; and the equities of the parties being equal, the court would not divest him of his legal right.

In *Willis* v. *Twambly*, (13 Mass. Rep. 204,) a note had been given to a minor, payable in sheep. He sold the note to a third person, and received a watch in payment. The infant afterwards elected to rescind the bargain, and tendered the watch to the assignee, who refused to receive it; and afterwards assigned the note to a *bona fide* assignee without notice. The court held, that the first assignee could transfer to the second no greater right or interest in the note than he had himself; and that the second assignee took it subject to all the equity which existed between the infant and the first assignee. In the same case, Parker, Ch. J., says, "the assignee of a chose in action must take it principally upon the credit of the party from whom he receives it; for it is always liable to be defeated by equitable circumstances subsisting between the original contracting parties, the assignee being subject to the same equity as the assignor.

In the case before me, the sealed note was merely pledged to Mullins to secure the payment of the $100; to that *extent alone he had an equitable claim upon the money due thereon. The complainant still retained the legal interest in the debt from the Hunts; and an action to recover the amount must be brought in his name. After repayment of the $100, his release to the Hunts would have been a legal and valid discharge of the debt. It was impossible for Mullins to transfer any greater right to the bank than he himself possessed. That was not a legal right, but a mere equitable lien upon the chose in action, which has since been divested, and that before Covell had any notice of the transfer. The maxim, *caveat emptor*, is properly applicable to this purchase of a chose in action. If the agent of the bank had used the same diligence in ascertaining the right of Mullins to the note, as he did in

ascertaining the liability of the obligors, he never would have advanced the money on the credit of this instrument. The bare signature of Covell on the instrument was certainly no better evidence of the right of Mullins than the signature of the Hunts was of their indebtedness. There was as much occasion for inquiry in the one case as in the other.

Again, the equity of Covell to have his note returned arises out of a transaction prior in point of time to the advance of the money by the bank. The prior equity and the legal right are both united in the complainant; he is, therefore, entitled to the whole of the proceeds of the sealed note. And the defendants having refused to deliver up the note after they were informed of his rights, must pay the costs to which he has been subjected in consequence of that refusal.