## Case No. 18,093.

### WRIGHT v. SHUMWAY.

[1 Biss. 23;[1] 2 Am. Law Reg. 20.]

District Court, D. Wisconsin. Aug. Term, 1853.

SETTLERS ON UNSURVEYED LANDS — VALIDITY OF CONTRACT—EQUITABLE MORTGAGE— AFTER-ACQUIRED TITLE.

1. A covenant on the part of settlers on unsurveyed lands of the United States, to purchase those lands, as soon as surveyed and offered for sale by the government, and then mortgage them to a creditor, to secure a debt, is not a contract in violation of sections 4 and 5 of the act of congress approved March 31, 1830 [4 Stat. 390], for the relief of purchasers of public lands, and for the suppression of frauds at public land sales.

[Cited in Calhoun v. Memphis & P. R. Co., Case No. 2,309.]

2. A mortgage given to secure a debt due and payable, no time of payment being specified, may be redeemed or foreclosed at any time.

3. An equitable mortgage springs from an agreement, express or implied, that there shall be a lien. A covenant by a debtor with his creditor, to purchase certain lands, and then mortgage them to him will be enforced in a court of equity by a decree of sale.

4. Where a settler on public lands, entitled to a pre-emption, procures a capitalist to pay the purchase money of the land into the land office of the United States, and allows him to take the receiver's receipt in his own name, or makes an assignment to him of his certificate of location as his security for such payment, receiving back the bond of said capitalist for a deed upon the repayment, on a certain day, of the purchase money with interest, this is in equity a mortgage of the land, redeemable by the settler or his alienee at or before the time of payment, according to the condition of the contract.

5. A mortgagee of lands to which the mortgagor had no present title, is entitled in equity to the benefit of an after-acquired title.

In equity. The defendants, Charles N. Shumway, John P. Shumway, Jabez N. Rog-

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

ers, and John S. Harris, in the year 1849, became indebted to the complainants, by several promissory notes in the sum of twelve hundred dollars. In December, 1850, Charles N. Shumway and John P. Shumway, having settled upon, and being in possession of, unsurveyed public lands, in this state, executed and delivered to complainants a deed, or instrument under seal, by which, for the consideration of one dollar, they sold, assigned, and conveyed to them all their right, title, and interest in those lands, describing them, together with all the water privileges, rights and easements, and other appurtenances, and the buildings erected on the same. The deed provided, that "the property hereby assigned, being intended to include all the claims held by us for the parties of the first part, on the lands now occupied by them, and yet unsurveyed, and not sold by the United States, to have and to hold the same to the said Edward and Augustus and their heirs forever. This grant is intended as a security for the indebtedness of the said parties of the first part to the said party of the second part, consisting of three notes, in all about twelve hundred dollars besides interest. And the said parties of the first part covenant and agree with the said parties of the second part, that they will purchase the said land of the United States whenever the same shall be surveyed and exposed for sale, and will mortgage the same with the appurtenances to the said parties of the second part, their survivors or assigns to secure the indebtedness aforesaid, or such part thereof as may be then unpaid, as soon as the land shall be exposed for sale." The deed was filed with the town clerk, as a chattel mortgage, and also recorded in the office of the register of deeds, as a mortgage of real estate, in October, 1852. In October, 1851, the defendant, Jabez N. Rogers, by his deed, duly executed and acknowledged, confirmed the aforesaid deed, and conveyed to the complainants his interest in the premises, for the purpose of securing the debt. The lands being surveyed, were offered for sale by the United States, in June, 1852. In November, 1852, John P. Shumway proved up a pre-emption right, and entered one hundred and sixty acres of the land, which included the village of Wautoma, and assigned the certificate of location to John Fitzgerald, one of the defendants, in consideration of the payment by him of the purchase money, at the land office, at the request of Shumway. And at the same time, Fitzgerald entered in his own name, one other quarter section of the land, for Charles N. Shumway, of which he claimed a right of pre-emption. Fitzgerald having purchased the two quarter sections, at the instance and request of the Shumways, gave to each of them a bond in the penalty of five hundred dollars, "conditioned that he shall make to them respectively a deed for his particular quarter

section described in the bond, on paying to him two hundred dollars with interest, within two years thereafter, and also paying the annual taxes." After those two quarter sections were entered at the land office by Fitzgerald, demand of a mortgage was made by complainants of the Shumways, in pursuance of their covenant. Bill taken as confessed against John S. Harris one of the defendants, and also against Rogers, he not claiming any interest in the lands. The Shumways and Fitzgerald make defense.

Winfield Smith, for complainants, cited Barber v. Harris, 15 Wend. 617; 2 Pow. Mortg. 522, and note; 3 Pow. Mortg. 1049; Foster v. Foust, 2 Serg. & R. 11; Ex parte Wills, 1 Ves. Jr. 162; 1 Smith, Lead. Cas. Eq. 510; 2 Smith, Lead. Cas. Eq. 302–304; In re Howe, 1 Paige, 125; 4 Kent, Comm. 150; Deacon v. Smith, 3 Atk. 323; Mitchell v. Winslow [Case No. 9,673]; Gilmer v. Poindexter, 10 How. [51 U. S.] 257; Lambert v. Nanny, 2 Munf. 196; Patterson v. Johnston, 7 Ham. 225; Tompkins v. Mitchell, 2 Rand. (Va.) 428; Marshall v. Bush, 1 Morris, 275; Kizer v. Lock, 9 Ala. 269; Carter v. Rockett, 8 Paige, 437; 2 Story, Eq. Jur. §§ 64, 159, 790, 1216, 1231.

Francis Randall, for defendants.

MILLER, District Judge. It is contended on the part of the defendants, that the deed of the Shumways to complainants is a contract in violation of the act of congress, approved March 31, 1830 (4 Stat. 392), entitled "An act for the relief of the purchasers of public lands, and for the suppression of fraudulent practices at the public sales of the lands of the United States," and is therefore void.

[I do not think that this is a contract prohibited by this act of congress. The plaintiffs were merchants doing business in the city of New York, and not contemplating the purchase of this land, or of any interest therein, either at a public sale by the government, or in any other manner, but merely desiring a security for their demand, accepted this deed for the purpose.] [2]

I do not think that this position is tenable. There is nothing in the deed tending to the formation of a combination of purchasers, or to prevent biddings for the land at a government public sale. But the improved portion of the land was not intended by the Shumways to be the subject of a public sale. As settlers and improvers, at the date of the deed, they considered that their right to pre-emption would be secured, which was afterwards perfected through Fitzgerald. The deed is not within the prohibition of the act. Private sales of pre-emption claims of settlers are recognized as valid, by the federal courts. Bush v. Marshall, 6 How. [47 U. S.] 284; Thredgill v. Pintard, 12 How. [53 U. S.] 24.

At the date of the deed, the Shumways had peaceable and undisturbed possession of the land, with the tacit or implied assent of the United States, and had erected thereon a saw-mill, dwellings, a tavern stand and other buildings; and they had an inchoate right of pre-emption. In consideration of their indebtedness to the complainants, they made the deed as a security. The debt was then payable. A conveyance, covenant, or mortgage, founded on a past consideration, is valid.

[But even if the land was to have been purchased by the Shumways at a public sale, there is nothing in this deed to prevent competition in bidding, or to stop these plaintiffs from becoming the purchasers; but on the contrary, the covenant on the part of the Shumways to purchase the land and then to mortgage it, might have induced competition, and required them to bid it off at a much higher rate than the minimum price.

[The defendants objected to this deed as void for want of consideration; and also, that if the debt was a consideration, it was then due and payable, and no time is mentioned for its payment, or for the purchase of the land, or giving the mortgage, and therefore it is vague and uncertain. A conveyance, contract, or mortgage founded on a past consideration is valid.] [3]

When the money is due and payable, and no time is mentioned in the mortgage for its payment or redemption, a foreclosure will be decreed at any time. And a mortgage intended to secure a certain debt is valid in equity, for that purpose, whatever form the debt may assume.

[This deed is declared to be for the security of the debt therein specified, with a covenant to purchase the land and to mortgage it whenever it should be surveyed and offered for sale by the government.] [3]

The consideration expressed in the deed is valuable and is sufficient to authorize the court to enforce performance of its covenants.

It is further contended, that the deed is of no validity, the premises not being legally vested in the Shumways. The deed does not purport to be a mortgage of the fee, but nevertheless it may be valid. In equity, whatever property, real or personal, is capable of an absolute sale may be the subject of a mortgage. Therefore, rights in remainder, and reversions, possibilities coupled with an interest, rents, franchises, and choses in action, are capable of being mortgaged. 2 Story, Eq. Jur. § 1021. And courts of equity support assignments of, or contracts pledging property, or contingent interests therein, and also things which have no present, actual, potential existence, but rest in mere possibility.

Mr. Justice Story, in his opinion in Mitch-

---

ell v. Winslow [Case No. 9,673], remarks: ["It seems to me a clear result of all the authorities, that, whenever the parties, by their contract, intend to create a positive lien or charge, either upon real or upon personal property, whether then owned by the assignor or contractor or not, or, if personal property, whether it is then in esse or not, it attaches in equity, as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto against the latter and all persons asserting a claim thereto under him, either voluntarily or with notice."][4]

If a mortgage be made of an estate, to which the mortgagor has not a good title, and then he who has the real title conveys to the mortgagor, or his representatives, a good title, the mortgagee will be entitled in equity to the benefit of it, for it will be considered as a graft into the old stock, and as arising in consideration of the former title. Seabourne v. Powel, 2 Vern. 10; Best v. Meddlenurst, 3 Atk. 376; Goodright v. Mead, 3 Burrows, 1703; McGinnis v. Noble, 7 Watts & S. 454; [Porter v. Emery, 1 Ch. Rep. 97; Harmer v. Morris, Case No. 6,076; Id., 7 Pet. (32 U. S.) 544].

The deed purports to be a mortgage of all the property or interest of the Shumways then existing, with express covenants "that they will purchase the land and mortgage it to the complainants to secure their indebtedness." By this express written agreement to make a mortgage, a lien is created on the land, in equity, on the principle that what has been agreed to be performed, shall be performed. Hankey v. Vernon, 2 Cox, Ch. 12; 3 Pow. Mortg. 1049 a, b. An equitable mortgage springs from an agreement, express or implied, that there shall be a lien. The agreement in this case to purchase the land, and then to mortgage it, is express, and is a specific lien, which will be enforced in equity. Finch v. The Earl of Winchelsea, 1 P. Wms. 277; Freemoult v. Dedire, Id. 429; Deacon v. Smith, 3 Atk. 323; Tooke v. Hastings, 2 Vern. 97; Lyde v. Mynn, 4 Sim. 505; Laundell v. Berry, Id. 481; Metcalfe v. Archbishop of York, 6 Sim. 224; Burn v. Burn, 3 Ves. 573; Legard v. Hodges, 1 Ves. Jr. 477. The same principle also seems to be well settled in the courts of this country. In re Howe, 1 Paige, 131; Delaire v. Keenan, 3 Desaus. Eq. 74; Menude v. Delaire, 2 Desaus. Eq. 564; Dow v. Ker, Speer, Eq. 413; Campbell v. Moseby, 6 Litt. (Ky.) 358; Fleming v. Harrison, 2 Bibb. 171; Richter v. Selin, 8 Serg. & R. 425; Tyson v. Passmore, 2 Barr [2 Pa. St.] 122; Longworth v. Taylor [Case No. 8,490]. I do not deem it necessary to enter into a minute statement of these cases, and also of many others, as I consider the principle to be settled beyond all controversy. The deed is an equitable mortgage, to be enforced by a bill in equity.

[4 [From 2 Am. Law Reg. 20.]]

The legal title to half the land is in Fitzgerald, subject to the equity of the Shumways, to redeem on or before the day of payment specified in the bonds of Fitzgerald for conveyance. On or before the day of payment, Fitzgerald is obligated to convey to the Shumways, or to their assigns, or to the purchaser under a decree in this case, upon the payment to him of the amount he advanced for the land to the government, with interest, according to the conditions of the bonds. The Shumways continue to hold actual possession of the land. The bonds of Fitzgerald for deeds, are not conveyances of the land, but obligations, whereupon the Shumways, or their representatives or assigns, may compel, by bills in equity, conveyances of the fee, upon the payment of the purchase money, according to the conditions. The purchase of the land by Fitzgerald, at the instance of the Shumways, the settlers and improvers in possession, and their acceptance of bonds for conveyances, are the same in equity as if they had made the purchases in their own names, with money borrowed of Fitzgerald, secured by mortgage of the land.

It is not necessary to determine the question of priority of lien, as the complainants consent to a decree of sale of the two quarter sections entered by Fitzgerald, subject to his lien, according to the conditions of his bonds to the Shumways, the lands being considered quite valuable, and abundant for the payment of both liens.

A decree of sale is ordered, according to the prayer of the bill.

[The plaintiffs might have come into court with a bill praying specific performance of the contract to mortgage, but such a useless proceeding is not required. The deed under consideration is an equitable mortgage of the premises, and is considered in this court, as to these parties, the same as a mortgage executed and delivered in legal form.][5]