SOLOMON DOWNER v. SOUTH ROYALTON BANK.   JOHN E. CHAM-
    BERLIN, *Claimant*, v. RUFUS HYDE AND ORANGE
        COUNTY BANK, *Claimants*.

[IN CHANCERY.]

*Sheriff and Deputy.   Subrogation.   Chose in Action.   Assignment.
Notice.*

The rule that a *bona fide* purchase for value and without notice of prior equities
is a good defence, is held to apply only to cases where the purchaser has ob-
tained a legal title, or a legal superiority and advantage, in good faith and for
value.

The assignee of a *chose in action* takes it subject not only to all equities between the
assignor and the debtor, but to equities residing in a third person against the as-
signor.   The cases which seem to hold otherwise are peculiar and exceptional.

The general rule with reference to equitable assignments and assignments of equi-
ties is laid down as follows :   When the equity is binding on the assignor, those
who buy from him subsequently will necessarily be bound in the same manner,
and can acquire no greater or better right than he had to sell or part with.   When
therefore the assignment or transfer of a *chose in action* is in question, priority
in point of time will give priority of right unless there are some special circum-
stances, other than *good faith and the payment of value, to justify or require* a
different conclusion.

Where a deputy recovered judgment against a bank for money deposited, which
he had collected on an execution, the equitable title to the money and to the
judgment was in the execution creditor until his claim against the sheriff for the
*la ches* of his deputy was paid by the sheriff.   Upon such payment the sheriff was
entitled to be subrogated to the right of the execution creditor.

A sale of the judgment by the deputy transferred no legal title; it conveyed at
most but an equitable right.

It is immaterial whether the purchaser had notice of the prior equity or not, but it
is held in this case that he had notice.

APPEAL, from the court of chancery.   The facts are sufficiently
detailed in the opinion of the court.

*C. W. Clarke*, for Hyde and Orange County Bank.

*Leslie & Rogers* and *Peck & Fifield*, for Chamberlin.

2

The opinion of the court was delivered by.

WILSON, J. It appears that Henry Godfrey, in December, 1852, as deputy sheriff under the orator, Chamberlin, collected an execution in favor of John Bradley against Daniel Tarble, Jr., amounting to $1850.88 and deposited the funds in the South Royalton Bank, but did not return the execution nor pay over the money to Bradley. Bradley in 1854 sued Chamberlin for Godfrey's laches, and notice of the suit was given to Godfrey, who took the defence of it upon himself and such proceedings were had therein that Bradley, in 1859, recovered judgment against Chamberlin for $2631.80 damages and costs. Bradley also brought *scire facias* against the bail of Chamberlin for the default of his deputy Godfrey. Godfrey obtained and used part of the funds so deposited by him in the bank, and in 1857, he sued and obtained a judgment against the bank for the balance, it being $1779.75, including interest and costs, after which the bank failed and its effects passed into the hands of a receiver who was appointed upon application of Solomon Downer, who instituted the original bill in the case for the purpose of closing the affairs of the bank. Chamberlin sued the bond given him by Godfrey and his bail and obtained judgment against them, but in consequence of their insolvency he was able to secure only about one-third of the amount of the judgment recoverd against him by Bradley. Godfrey then left the state, since which time he has resided in the state of Wisconsin, and has had no known property in this state except the claim he has made to the judgment against the South Royalton Bank. It appears that Godfrey was indebted to the Orange County Bank upon certain notes which were signed by him and by his son-in-law Hazen Campbell who was surety for Godfrey. In April, 1859, Godfrey, then residing in Wisconsin, in consideration of Campbell's liability to the bank on the notes he had signed as surety for Godfrey, and that Campbell had agreed to pay certain other debts of Godfrey by advancing money for that purpose assigned to Campbell the judgment against the South Royalton Bank. Chamberlin, then liable to pay the judgment recovered against him by Bradley for the laches of Godfrey, claimed the judgment recovered by Godfrey against the South Royalton Bank, and brought his bill in chancery against God-

frey and Campbell, setting forth among other things that the claim on which the judgment was recovered was for the money collected by Godfrey on the execution in favor of Bradley against Tarble, and deposited in the bank, the insolvency of Godfrey and his bondsmen, that the attempted assignment of the judgment by Godfrey to Campbell was for the purpose of covering up the funds, and fraudulently depriving Chamberlin of his equitable right thereto, and praying that he might be subrogated to the rights of Godfrey and Campbell to the judgment in question. The bill was made. returnable to a term of the court of chancery, holden within and for the county of Orange, in January, 1861, and they were duly notified to make their appearance, but they did not appear and it was ordered that the bill be taken as confessed; and by a decree of that court at that term Chamberlin was subrogated to the rights of Godfrey and Campbell, and the equitable title to the judgment and to the money due thereon, as between Chamberlin, Godfrey and Campbell, was fully adjudicated, and by that decree settled in Chamberlin, from which decree no appeal is taken. It further appears that soon after Godfrey assigned the judgment to Campbell, Campbell turned it out to the defendants Hyde and the Orange County Bank to secure the notes signed by Campbell as surety for Godfrey, and to secure Hyde for future advancements to Campbell, but it does not appear that Chamberlin, at the time he obtained his decree against Godfrey and Campbell, knew or had been informed that Campbell had turned out or transferred the judgment to these defendants, or to either of them. Chamberlin paid the judgment obtained against him by Bradley, and obtained leave to cite in Hyde and the Orange County Bank to show cause why the alleged assignment or transfer of the judgment to them should not be set aside and the judgment be ordered to be paid to Chamberlin. The defendants appeared and filed their answer in which they allege that they are purchasers of the judgment for value and without notice of the equitable rights of Chamberlin.

The first and principal question to be determined is whether the orator Chamberlin is entitled to hold the judgment as against Hyde and Orange County Bank, if they are purchasers for value and with-out notice of Chamberlin's equitable claim thereto. It is conceded

that the money collected by Godfrey was the property of Bradley. It was deposited by Godfrey in the South Royalton Bank, for which a certificate of deposit was given to him, on which the judgment in question is founded. But all this did not make the debt the prop erty of Godfrey. He held the money, the certificate of deposit and the judgment and execution against the bank in trust for Bradley. The equitable title of Bradley to the money and to the judgment and execution continued so long as his claim against Chamberlin for the laches of Godfrey remained unsatisfied. Bradley pursued his remedy against Chamberlin who was made liable for Godfrey's neglect to pay the money. Chamberlin paid it to Bradley by which he became entitled to be subrogated to Bradley's right to the funds, and Godfrey could not in equity hold the funds as against Bradley or Chamberlin. *Burk* v. *Chisman,* 3 B. Monroe, 50. It is insisted by the defendants' counsel that they are purchasers of the judgment for value and without notice of the prior equity of Chamberlin, and it is upon this ground that they claim to hold it.

There can be no doubt that it has been held several times that a *bona fide* purchase for value and without notice is a good defence not only against all prior equities, but against all adverse proceedings in equity, whether instituted to compel the purchaser to surrender what he has purchased, or to discover which, would prejudice or impair his means of retaining it. 7 Stockton, 82 ; 2 Taylor, 214 ; 3 Johnson's Ch. 147. But on examination of the authorities cited by the defendant's counsel and other authorities applicable to the facts in those cases, it will be found that the principle applies only where the purchaser has obtained a legal title or a legal superiority or advantage, in good faith and for value. The intention of the Acts requiring deeds to be reorded was to secure subsequent purchasers and mortgagees against prior secret conveyances and fraudulent incumbrances, but a purchaser of real estate is only protected under the strict rule of equity where he has obtained the legal title, and without notice that his grantor has created in the estate a prior equity which exists in favor of a third person. It has been held in case of a negotiable note payable to bearer or indorsed in blank, which by commercial usage may be presented in the name of the

holder, if it is in the hands of an agent, or is stolen, or is lost by the owner, and by the improper act of the agent or finder is put in circulation and thus comes into the hands of a *bona fide* holder in due course of business, the equity of such holder will enable him to retain the note against the former owner. It has been decided that the right given by an indorsement of a bill or note, payable to order will have a preference over a prior lien or transfer made apart from the instrument and not written or indorsed upon it, because the one is at best a mere equity, while the other passes the legal title. In *The Commercial Bank* v. *Kortright* 22 Wend. 354, the court held that when stocks or other securities of a similar nature are in question, which are so far negotiable as to give each successive assignee a right which he may enforce or assert in his own name, those who take the precaution to procure a transfer in due course of law will be preferred to others whose equity may be prior in point of time, but who have failed to secure it by the proper legal formalities. In *Crary* v. *the City of Vicksburgh*, 31 Missisippi, 216, the court held where the legislature have provided a mode for the transfer of the legal title to bonds, those who pursue it, will merit the favor which equity extends to purchasers, and will be protected against antecedent equities of which they are ignorant at the time of taking the assignment. This embraces a large class of obligations, among which may be enumerated the coupon bonds, frequently issued by corporations which are so worded as to pass by delivery from hand to hand free from the antecedent equities of third persons. The legal title to the judgment in question is in Godfrey. Upon the rendition of that judgment the debt which it represents ceased to be negotiable; it became a mere chose in action and can be enforced only in his name. The assignment by Godfrey to Campbell conveyed to the latter no legal title to the judgment; it conveyed to him at most a mere equitable right, consequently the rule applicable to the purchase of a legal title for value and without notice does not apply. It is well settled on authority and principle that a purchase of *a chose in action* is not within the rule which protects purchasers for a valuable consideration, and that the vendee will not only take no better title than that of his vendor, but will not be entitled to set up the purchase as a bar

to equitable relief in favor of prior equities created by the vendor. *Covel* v. *The Tradesman's Bank*, 1 Paige, 131; *Cackel* v. *Taylor*, 15 Eng. L. & E. 101; *Mangles* v. *Dixon*, 13 Id. 82. The equitable right of Bradley to the money was created by Godfrey at the time he collected the execution against Tarble, in 1852. It attached to the judgment and execution against the bank as well as to the money deposited in the bank by Godfrey. The equitable right or claim of Chamberlin to the money or judgment grew out of the same transaction; it was created by the neglect of Godfrey to pay over the money to Bradley, by which Chamberlin became liable to pay it, and having paid it he stands in Bradley's shoes in respect to the funds in the hands of the bank. Campbell claims to have derived his equitable title to the judgment as late as in the spring of 1859, and the defendants took an assignment of the claim from Campbell at a still later period. The general rule, when the question arises between mere equities, that priority in point of time gives priority in point of right, is recognized by courts of equity as well as by those of common law. 2 Johnson's Ch. 608; 18 Wend. 240; 9 Paige, 76, and 10 Peters, 177. In *Covel* v. *Tradesman's Bank*, 1 Paige, 131 it appeared that C. held a sealed note against H. for $2425. payable to himself in twelve months. He borrowed $100. and pledged it to M. as security. M. transferred the note to the Tradesman Bank, obtained the money and failed. The bank demanded the payment of H. on the note. C. gave notice to the bank that he owned the note, but the bank was ignorant of the right of C. The court in that case held that C. having the legal title and prior equity was entitled to the note. Had the note been negotiable, and had it been taken by the bank in the usual course of business, then the equity of the bank would have been equal to that of C. and the bank having the legal title might have sued in their own name and have prevailed over the prior equity of C. Where the equities are equal the party who has the legal title will prevail; if neither party has the legal right the maxim in *prior est tempore potior est jure* applies. The assignee of *a chose in action* who only obtains an equitable interest therein, and who must sue in the name of the original owner is not protected against a prior equity. The rules respecting a purchaser without notice are framed

for the protection of him who purchases the legal estate and pays the purchase money without notice of an outstanding equity. They apply fully only to the purchaser of the legal estate, and the purchaser of an equity is bound to take notice of any prior equity. 7 Peters, 271. A purchaser of *a chose in action* takes it subject to all equities. *Cackel* v. *Taylor*, 15 Eng. L. & E. 101. The assignee of a chose in action or security of any kind, where there has been no fraud, stands in exactly the same situation as the assignor as to equities arising upon it. He must be taken to be cognizant of them. It is his duty to make inquiries and as a general rule the creator of the security thus assigned is not bound on receiving a simple notice of the assignment to volunteer information. If a loss arises it must fall upon him whose duty it is to make the inquiries and who has not made them. *Mangles* v. *Dixon*, 13 Eng. L. & E. 82. It is insisted by the defendants' counsel that there is nothing upon the face of the paper calculated to excite suspicion in Campbell of fraud on the part of Godfrey, nor of any want of title legal or equitable to the judgment; and that nothing is shown to be within Campbell's knowledge sufficient to put him upon inquiry as to the origin of the judgment, or as to whether other parties might have claims upon it. But it should be remembered that the judgment was evidence upon the face of it, and notice to Campbell that Godfrey could not convey a legal title to the debt against the bank, and that Campbell could only purchase an equitable right thereto, a right which must yield to the prior right of Chamberlin. Equity did not require Campbell to make inquiry as to the existence of prior equities, for the benefit the person or persons in whom such prior equities resided; but any inquiry in respect thereto, which Campbell might have made would have been made for his protection and benefit; Chamberlin having the prior equity could not be prejudiced by the neglect of Campbell to make inquiry, nor by his loss if he had made inquiry and failed to discover the prior equity of Chamberlin. It is conceded by the defendants that the assignee of a chose in action takes it subject to all equities between the assignor and the debtor, but they insist that this doctrine does not extend to an equity residing in some third person against the assignor. The *dicta* in some of

the cases considered apart from the point actually decided might create the impression that an equitable assignment of *a chose in action* will have the same effect in entitling the assignee to protection as a purchase of a real or supposed real title to land. Among these cases may be cited, *The Ohio Life Ins. Co.* v. *Ross*, 2 Maryland, Ch. 25, 39 ; *Mott* v. *Clark*, 9 Barr. 403, and *Moore* v. *Holcomb*, 3 Leigh. 597, which contain declarations that the assignee of a debt or chose in action is not liable to the latent equities of third persons which he had no means of discovering at the time of parting with his money and taking the assignment. But most of these cases will be found to depend upon principles peculiar to the assignment of bonds and mortgages or to the assignment of a debt secured by mortgage, where the mortgage passes with the debt to the assignee, or to depend on some special fact or circumstance which constituted an exception to the general rule, or to be mere applications of the well settled principle that the assignment of a debt or obligation is subject to the legal right of the debtor or obligor to take advantage of every defence which would have been good against the assignor, and which has not been acquired or set up in fraud of the rights of the assignee after notice has been given of their existence. 2 Leading Cases in Equity, 80. The right acquired by the purchase of a chose in action can not rise higher than that held by the seller at the time of sale. The rule which limits the right of the buyer by that of the seller, and subjects the title of the one to every draw back or defect, which attached to that of the other is the general rule both of law and of reason ;/ the favor shown by equity to the purchaser of a real or pretended legal title, is merely an exception, and those who seek to escape from the consequences of the sale must bring themselves within the exception. In *Mayben* v. *Kirby*, 4 Richardson's Equity, and in *Judson* v. *Corcoran*, 17 Howard, 502, the question was reviewed and the superiority of a prior equity over interest acquired by a subsequent purchase, said to be undeniable when *a chose in action* is in question, unless the purchaser has acquired some legal advantage or the holder of the equity been guilty of laches which vitiate his title, or deprive him of the right to enforce it against others who have been more diligent. The general rule

with reference to equitable assignments and assignments of equities, may therefore be said to be that when the equity is binding on the assignor, and unless it is binding it can not be an equity, those who buy from him subsequently will necessarily be bound in the same manner, and can acquire no greater or better right than he had to sell or part with. When, therefore, the assignment or transfer of a chose in action is in question, priority in point of time will give priority of right, unless there are some special circumstances other than good faith and the payment of value to justify or require a different conclusion. It is claimed by the defendants that the question is not whether they were purchasers of the judgment without notice of Chamberlin's equity, but did Campbell so purchase from Godfrey?

Whether Campbell or these defendants had notice at the time they claim to have foreclosed the judgment of the prior equity of Chamberlin is wholly immaterial in the decision of the case. But if it were necessary to consider the question of notice I think we should have no difficulty in finding that Campbell and these defendants took the judgment with full knowledge of the rights of Chamberlin. The family and business relations existing between Godfrey and Campbell from the time Godfrey collected the money to the time of the assignment; the want of any reason why Godfrey should attempt to conceal from Campbell the origin of the debt on which the judgment and execution were founded; the entire want of testimony that Godfrey did attempt to conceal from any one the origin of the claim, and the circumstances under which the assignments were made as disclosed by the testimony in the case, furnish strong proof that neither Campbell nor these defendants were deceived as to the prior equity of Chamberlin.

We are entirely agreed that Chamberlin is the equitable owner of the judgment in favor of Godfrey against the South Royalton Bank, and justly and equitably entitled to the money due and growing due from the bank upon the claim. The result is that the decree of the chancellor is affirmed and the case is remanded to the court of chancery for further proceedings in accordance with the views above expressed.