### SIMS *v.* WILSON ET AL.

PROMISSORY NOTE.—*Assignment.*—*Evidence.*—In an action against N., the maker, by W. as assignee of a note not payable in bank, payable ˙ to J., and by him assigned to W. by delivery only, S. became a party defendant, and filed a cross complaint, alleging that J., being the assignee of the personal property of E., who was insolvent, in trust to pay the creditors of E., sold the property, and, without the knowledge of the creditors, took therefor the note sued on of the purchaser, N., payable to himself, pledged said note as collateral security to W., the plaintiff, for a loan of money, delivered it, without endorsement, to W., and afterward absconded; whereupon said S. was appointed trustee for the creditors; prayer for judgment against N. on the note, and against W., that he be barred from asserting any claim to the note. *Held*, that the fact that the note was payable to J. was *prima facie*, but not conclusive evidence that he was the owner thereof; that as W. did not acquire the legal title, he should have protected himself by making inquiries of the maker; that neither W. nor the creditors had the legal title or the greater equity, but the equities of the creditors were prior to those of W.; and the cross complaint was good on demurrer.

From the Johnson Common Pleas.

*S. P. Oyler, D. Howe, R. M. Kelly,* and *C. W. Snow,* for appellant.

*W. W. Woollen* and *C. Byfield,* for appellees.

BUSKIRK, J.—This was an action by John M. Wilson, as

assignee of Samuel B. Jenkins, against Augustus and Lewis Neible, upon a promissory note executed by the said Augustus and Lewis Neible, payable to the said Samuel B. Jenkins, who sold and delivered the same to the said Wilson without endorsement. Jenkins was made a defendant to answer to his interest in the note. The appellant, as trustee for the creditors of Milton Engler, upon his own application, was made a party defendant, and thereupon filed a cross complaint against the said Wilson and the two Neibles, which was as follows:

"The defendant William P. Sims, as trustee for the creditors of Milton Engler, and in this behalf, by way of cross complaint against the plaintiff and his co-defendants, Augustus Neible and Lewis Neible, says, that on the —— day of ————, 1871, said Engler, not having property sufficient to pay his indebtedness, made an assignment of certain personal property to one Samuel B. Jenkins, the payee of the note sued on, in trust to dispose of the same, and apply the proceeds *pro rata* to the claims of said creditors, said assignment being made with the consent of said creditors; a copy of said assignment being filed and made part hereof, marked 'exhibit A;' that said Jenkins accepted said trust, and sold a portion of said property, and took notes from the purchasers in payment thereof, including the note sued on in this action, and wrongfully and fraudulently, and without the knowledge of said creditors, made said notes payable to himself individually; that afterward said Jenkins wrongfully and fraudulently, and without the knowledge of said creditors, pledged said notes, including the note in suit, to plaintiff, as collateral security for a loan of money, at the time loaned by said plaintiff to said Jenkins, and in pursuance thereof delivered said notes to plaintiff without endorsement; that afterward, and before the commencement of this suit, said Jenkins became insolvent and absconded to parts unknown, and is now a non-resident of the State of Indiana; that said Engler, ever since said assignment, has been a non-resident of the State of Indiana, and his property in said State, including

the property assigned to said Jenkins and the notes afore-
said, is not sufficient pay his said creditors ; that at the June
term, 1872, of the Johnson Court of Common Pleas, upon
the petition of one John Graham, such proceedings were had
that said Jenkins was removed from his said trust, and this
defendant appointed trustee in his stead, with authority to
do whatever may be necessary to be done in the premises ;
all of which will more fully appear from the records of said
proceedings, a copy of which is filed and made part hereof,
marked ' exhibit B ;' wherefore this defendant prays judg-
ment against said defendants Augustus Neible and Lewis
Neible, for the sum of ———— dollars, the amount due on
the note sued on, and against said plaintiff, that he be forever
barred from asserting any claim or title to the note sued on,
and for such other relief as may be right and proper."

A demurrer was sustained to the above cross complaint,
and the appellant excepted.

Augustus and Lewis Neible answered, setting up, in sub-
stance, the same facts that are contained in the above cross
complaint. To this answer a demurrer was sustained, but
no error is assigned on such ruling.

Appellant declining to amend, the case was submitted to
the court for trial, and a finding had and a judgment rendered
in favor of appellee Wilson, and against appellees Augustus
and Lewis Neible, for the amount due on the note, and in
favor of appellees Wilson and the two Neibles and against
appellant for costs upon the cross complaint.

The only error assigned is, that the court below erred in
sustaining the demurrer of appellee Wilson to appellant's
cross complaint.

We have not been favored with a brief from the appellee
Wilson. The following extract from the brief of counsel for
appellant will furnish a statement of the respective positions
assumed :

" We are obliged to anticipate the argument of counsel for
appellee Wilson, but we suppose they will insist that he is

entitled to the proceeds of the note in controversy upon some one or all of the following grounds :

"1st. Upon the ground that appellee is a *bona fide* purchaser.

"2d. Upon the ground that the creditors represented by appellant are estopped to claim any interest in the note.

"3d. Upon the ground that the case at bar comes within the equitable rule, that when one of two equally innocent parties must suffer by the fraud of a third person, he should bear the loss who has entrusted such third person with the power to perpetrate the fraud.

"The rules in favor of *bona fide* purchasers do not apply to the case at bar. They relate principally to *bona fide* purchasers : 1st. Of real estate. 2d. Of commercial paper. 3d. In England, of articles sold in market overt.

"These rules are exceptions to the more general rule, that no one can convey a better title than he himself has. This general rule is especially applicable to sales of personal property. A familiar illustration of this is seen in the case of a *bona fide* purchaser of personal property sold to another upon condition that it is to remain the property of the first seller until paid for. Here the property is, or may be, actually delivered to the first purchaser; he is clothed with all the *indicia* of ownership; and there is nothing to put the second purchaser upon his guard. At first blush it would seem that under such circumstances the second purchaser might well urge that if loss is to follow the fraud, or breach of contract, of the first purchaser, it ought to fall upon the first seller who first gave him credit and clothed him with the power to deceive. Yet it has been held repeatedly that in such case the second purchaser must yield to the rights of the first seller. *Dunbar* v. *Rawles*, 28 Ind. 225; *Austin* v. *Dye*, 46 N. Y. 500.

"The reasons upon which these decisions are based are equally applicable to the case at bar. The mere fact that one holds a note, or that it purports to be payable to him, may be *prima facie*, but is not conclusive, evidence of owner-

ship. He may hold it as collateral security, or in the capacity of.executor, guardian, or trustee."

The ruling in *Dunbar* v. *Rawles, supra,* is supported by the previous rulings of this court, in *Shireman* v. *Jackson,* 14 Ind. 459, *Hanway* v. *Wallace,* 18 Ind. 377, *Thomas* v. *Winter,* 12 Ind. 322, and *Plummer* v. *Shirley,* 16 Ind. 380, where the authorities are fully collected, and the law accurately stated.

The general rule, that no one can convey a better title· than he himself has, is more particularly applicable to assignments of choses in action not governed by the law merchant.. That the assignee in such case takes the chose in action subject to all the equities attaching to it in the hands of the· assignor, is too well settled to admit of controversy. 2 Spence· Eq. Jur. 863 ; Broom Leg. Max. 416, 419 ; Snell Eq. 66 ; Perry· Trusts, sec. 831.

The case of *Covell* v. *The Tradesman's Bank,* 1 Paige, 131, is much in point. In that case Covell held a note, not negotiable, against T. & J. Hunt. He borrowed money of Mullins, and pledged the note as security, indorsing his name on· the back. Mullins, pretending to be the owner of the note, procured a loan from the bank, and assigned the note by indorsement to the bank, which took the note for value and without notice. Mullins afterward became insolvent, and the question involved in the suit was, whether Covell or the bank was entitled to the proceeds of the note. WALWORTH, C. J., said that there were three questions in the case :

" 1. Has either party the greater equity ?

" 2. If the equities are equal, has either party the legal right ?

" 3. If neither has the greater equity, or the legal right,.. which party has the prior equity ?"

He decided that neither party had the greater equity, or the legal right; but that Covell's equity was prior to that of the bank, and on this ground decreed in favor of Covell.

The case of *Evertson* v. *Evertson,* 5 Paige, 644, is still. more in point. The decision is fairly presented in the syl--

labus, which is as follows : " Where a guardian invested money belonging to the complainants, who were his wards, upon a bond and mortgage in his own name, and afterward assigned such bond and mortgage as a collateral security for an antecedent debt due from himself, and subsequently died insolvent ; held, that the assignee of the bond and mortgage was not entitled to hold them as against the complainants, although he had no notice of their equitable right to the bond and mortgage at the time of the assignment; and that a payment to the assignee, by the mortgagor, after notice of the equitable rights of the complainants, would not protect him against their prior equity."

In the case last cited, it appears that the assignment was made as collateral security for a pre-existing debt. But if the note is not negotiable, or if, being negotiable, the assignment is a mere equitable assignment, then the assignee takes subject to all equities against the assignor, whether the assignment be for a pre-existing or a contemporaneous consideration. In this very case, WALWORTH, C. J., says : " In the case of *Covell* v. *The Tradesman's Bank*, I came to the conclusion that no such distinction " (between the equities of the obligor and those of persons not parties to the note) " existed where the subsequent assignee obtained nothing but an equity under his assignment, but neither the legal estate, nor the legal right to sue in his own name; even where he had actually advanced his money upon the faith of such assignment." pp. 648, 649.

Indeed, it is apparent from the two cases just cited, as well as from the one next cited, that the question whether the assignment is for a pre-existing or a contemporaneous debt is only material as it respects notes negotiable by, and assigned according to, the law merchant. In the case at bar, it will be observed that the note is not negotiable by the law merchant, and cannot have a *bona fide* holder, in the technical meaning of that term. Moreover, the assignment to appellee, as is shown by the pleadings, was by delivery only, and hence vested in him only an equitable title.

The case of *Bush* v. *Lathrop*, 22 N. Y. 535, very fully sustains the doctrine above stated. In that case, one Addis executed a bond and mortgage, not negotiable, to Cole; Cole assigned the same to Noble, plaintiff's intestate; Noble assigned the same by written assignment on the back of the mortgage, as collateral security, to Preston; Preston assigned the same by written assignment, purporting to be for a valuable consideration, to Smith & Newton; Smith & Newton assigned the same to defendant Lathrop, for a valuable consideration paid at the time. Action by plaintiff to compel the defendant to assign to plaintiff the bond and mortgage. An elaborate opinion was delivered by DENIO, J., who, assuming that the defendant was a purchaser for value and without notice, held that he took, nevertheless, subject to all the equities in favor of plaintiff's estate.

In full accord with the cases cited above is the case of *Elliott* v. *Armstrong*, 2 Blackf. 198. In that case, the court say: "Perhaps, however, it may be said that Horner, by the purchase from Ruffin for a valuable consideration, became the owner of the note, although Ruffin, at the time, had no property in it, nor any authority to sell it. In the sale of personal property, not in market overt, the general rule is, that though the purchase be *bona fide* and for value, the purchaser can receive no better title than that of which the seller was possessed; and must, at all times, yield to the claim of the rightful owner. To this general rule, however, there is an exception in favor of negotiable instruments, such as bills of exchange and promissory notes. When these are originally made payable to bearer; or when, in the first instance, they are payable to order, and afterward by a blank endorsement become payable to bearer, they pass by delivery; and the purchaser of them, who uses caution, pays a valuable consideration, and takes them in the course of business, has a good title against all the world, whether the seller had any title or not. *Wookey* v. *Pole*, 4 Barn. & Ald. 6."

The above doctrine is correct, subject to the modification

made by statute as to what notes are governed by the law merchant. See *Parkinson* v. *Finch*, 45 Ind. 122.

The case of *Stoner* v. *Brown*, 18 Ind. 464, is clearly distinguishable from the foregoing cases. There, Henry C. Justice was the absolute owner of the note, as its payee. He pledged and delivered it to Hannah Justice, to secure the payment of a debt. While the note was thus pledged, she, Hannah, was induced by his fraudulent representations to redeliver it to him for a pretended temporary purpose; and, instead of returning the note to her, he sold, and, for a valuable consideration, assigned it to Brown, who had no notice whatever that it had been pledged. The note was never assigned to Hannah Justice, but the legal title remained in the payee. She had a mere equitable right to possess the note, and control its proceeds. As between her and him, her equity would have been protected against his fraud, but the court held that she was not entitled to such protection against Brown, who was a *bona fide* purchaser without notice of her equitable rights. He held the legal title, and she had a mere equity. In such case, the legal title must prevail over a mere equity. In the present case, Jenkins held the naked legal title, but was not the beneficial owner of the note. Although the note was payable to him, he held it in trust for others. Nor did he by assignment vest the legal title in Wilson, but by delivery he vested in him an equitable interest.

Upon the facts appearing in the record, no fault or negligence can be imputed to the creditors. It is alleged in the cross complaint, and admitted by the demurrer to it, that the creditors had no knowledge that Jenkins had taken the note payable to himself; but that he had so done fraudulently, and had fraudulently sold and delivered it to Wilson. The creditors were not bound to presume that Jenkins would act fraudulently. The fact that the note was payable to Jenkins was *prima facie*, but not conclusive evidence that he was the owner. As Wilson did not acquire the legal title, he should have protected himself by making inquiries of the makers.

In the present case, neither Wilson nor the creditors had the legal title to the note.    The equities of the parties were equal, but those of the creditors were prior to Wilson's, and they must prevail.

In our opinion, the court erred in sustaining the demurrer to the cross complaint.

The judgment is reversed, with costs ; and the cause is remanded, with directions to the court below to overrule the demurrer to the cross complaint, and for further proceedings. in accordance with this opinion.