## FIRST NATIONAL BANK OF PETERSBURG v. BEACH.

[No. 4,996.　Filed November 17, 1904.]

1. BILLS AND NOTES.—*Consideration.*—*Patent Right.*—Where, in an action on a promissory note, not negotiable as an inland bill of exchange, it is answered that such note was given in consideration of certain patented articles, and the exclusive right to sell such patented articles in a certain county, and that the payee of such note had not caused any copy of his letters patent to be filed in the clerk's office of such county; that he had caused no affidavit of the genuineness of such patent or that he had full authority to sell same, to be filed with such clerk; that he had filed no affidavit giving his name, age, residence or occupation; that no clause containing "given for a patent right" or "given for a right to manufacture a patented article" or any other words showing the consideration, was written into such note, such answer states a good defense to such note, since by §§8130, 8131 Burns 1901, Acts 1899, p. 112, a note given under such circumstances is forbidden.　p. 85.

2. SAME.—*Consideration.*—*Want of.*—An answer, in an action on a promissory note by an assignee, averring a want of consideration, is sufficient, and it is not essential for such answer to show that such want existed before notice of the assignment had been given to the maker.　p. 88.

3. SAME.—*Fraud.*—Where the payee of a note procured the maker thereof to execute such note by fraudulently representing to such maker that such payee had secured orders for the alleged patented article for which such note was given, from all the representative citizens of the different townships in the maker's county and that such maker relied upon such false representations, and that in truth, no such orders were given, and such article was not salable except to a very few people, such fraudulent conduct is sufficient to vitiate such note and a defense setting up such facts is sufficient.　p. 88.

4. NEW TRIAL.—*Weighing Evidence.*—Where there is some evidence tending to support the finding, the judgment below will not be disturbed.　p. 89.

5. JUDGMENT.—*Power of Appellate Court to Render.*—Under the law of 1903 (Acts 1903, p. 338), the Appellate Court has no power to

render a final judgment on the weight of the evidence, where the case is triable by jury, even though a trial by jury is waived by the parties and the court tries the same. p. 89.

From Pike Circuit Court; *E. A. Ely*, Judge.

Action by the First National Bank of Petersburg against Thomas L. Beach. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*E. P. Richardson* and *A. H. Taylor*, for appellant.

*J. W. Wilson, S. G. Davenport* and *T. H. Dillon*, for appellee.

WILEY, J.—Appellant sued appellee upon two promissory notes payable to the order of A. Borders, and assigned by indorsement in writing to appellant before maturity. The notes were not payable at any bank within this State. Appellee answered in six paragraphs, to each of which a demurrer was addressed; and such demurrer was overruled as to the first, fourth and fifth paragraphs, and sustained as to the second, third and sixth. Appellant replied in three paragraphs, but as no question is presented, arising under either paragraph of reply, it is unnecessary to refer further to them. The cause was tried by the court, resulting in a general finding and judgment for appellee. Appellant's motion for a new trial was overruled, and by its assignment of error it is entitled to have considered the action of the court in overruling its demurrer to the first, fourth and fifth paragraphs of answer, and also in overruling its motion for a new trial.

In his first paragraph of answer appellee seeks to build his defense upon the fact, as alleged therein, that the original payee of the note had not complied with the statute in regard to the sale of patent rights. The sum and substance of that paragraph of answer is that the Model Commissary Company, by A. Borders, its attorney in fact, sold to appellee ten dozen articles, claimed by it and him to be

patented articles, protected by United States patent, dated June 26, 1900, and called "model commissary," and the exclusive right to sell said patented articles in a designated territory and during a designated period; that at the date of the execution of said notes said company, by its attorney in fact, or its attorneys in fact, executed three other writings to the appellee, one of which gave him the sole and exclusive privilege, as dealer, to sell said model commissary in said territory, and the other a bill of sale for ten dozen model commissaries at $4.50 each, with payment on each commissary of $2; and that said writings, together with said notes, constitute one contract, and copies of all of which writings are filed as exhibits. It is further alleged that the sole and only consideration for said notes was ten dozen of said articles sold to appellee, which articles were represented and claimed by said company to be patented articles, or patent right articles, and the exclusive right to sell the same in the territory designated. It is also charged that said Model Commissary Company, by A. Borders, its attorney in fact, had not, nor had anyone else, filed with the clerk of the court of said Pike county, Indiana, a copy of its letters patent, nor was any affidavit filed that such letters were genuine and had not been revoked and annulled, and that the Model Commissary Company (A. Borders, attorney in fact) had full authority to sell or barter said articles claimed to be a patent right, nor was any affidavit so filed, giving the name, age, occupation and residence of said alleged payee or his agent. It is further alleged that there is no clause in said notes, or either of them, containing the statement, "given for a patent right," or "given for a right to manufacture a patented article," or words which clearly state what was the consideration for which the notes were given.

By his fourth paragraph of answer the appellee admits the execution of the notes sued on, that the same were purchased by plaintiff before maturity, and that they were

both due and unpaid, but alleges that each of said notes was given without any consideration.

The fifth paragraph sets up fraud in procuring appellee to execute the notes. The paragraph avers that at the time of making the sale to him of the patented articles, and at the time he executed the notes, the said Model Commissary Company, by its attorney in fact, claimed to the appellee that said model commissaries were patent rights and protected by United States patent, and that he relied upon said statements at the time, and believed them to be true; that there was not inserted in the body of said notes, or either of them, "given for a patent right," or "given for the right to manufacture a patent right," or words which clearly stated the consideration for which the notes were given. It is also averred: That appellee had never had any experience in the purchase and sale of a patent right, nor any article called or claimed to be a patent right, and that he knew nothing about how to sell or dispose of said commissaries, but had to rely on all the statements so made by said company, and the statements made to him by said Borders; that said Borders was a shrewd dealer and trader in patent rights, and knew all about the business, and he knew that the appellee knew nothing about it; that as a further inducement to appellee to make said purchase and execute said notes, said Borders exhibited to appellee a large bunch of orders for said commissaries, claiming that there were more than two hundred of them, executed by almost every business and professional man in the town of Petersburg, and every leading farmer in Washington, Madison, Clay and Jefferson townships in Pike county, Indiana, and said that they were orders that he (Borders) had taken for said commissaries, and that he had four other men working for him, who had taken as many as he had; that it was an article that everybody wanted, and that there would be no trouble in selling it, and that he (Borders) would make over $5,000 in his profits from the

sale of said commissaries on individual orders in said county; that, in truth and in fact, said Borders had not made said sales and taken said orders; that if the names of said parties were on said orders, said Borders, or some one at his instance, had put them there, without authority, and that, in truth and in fact, said articles could not be easily sold, and but few people wanted them; that, as an additional inducement to appellee to execute said notes, said Borders claimed that he had been in Rockport, in Spencer county, Indiana, just before coming to Pike county, and that he had, while there, taken a large number of orders for said commissaries, to wit, thirty-five, from the most influential and reliable people in and around Rockport, and that there would be no trouble to sell the commissaries in that county, and that if appellee would make said purchase and execute said notes he (Borders) would turn over to this appellee all of said orders in Spencer county, and let him have that county to operate in; that he relied on said statements and believed them to be true, that said articles would be of easy sale and great demand in said county, and, so relying upon and believing said false and fraudulent statements, he did make said purchase and executed his notes sued upon, when in truth and in fact, as he afterward found, there were only twenty of said orders, and most of them were forgeries, to wit, fifteen of them, and that said commissaries would not sell in said county, and were not in demand.

The answer further charges that Borders and his other men acting with him, for the fraudulent purpose of cheating, swindling, defrauding and inducing citizens of Pike county, and the appellee in particular, to execute said notes, prepared and carried with him large numbers of papers purporting to be individual orders for commissaries from the professional and business men of the town of Petersburg, and representative farmers of said Washington, Jefferson, Madison, Clay and Logan townships in Pike

county, and, in the course of the negotiations of sales for territory and ten dozen commissaries, would exhibit these pretended orders to this appellee, and say to him, "See the individual orders I have taken," and then pretend to run over and read the names of the most influential men in said township; that said acts on the part of said Borders did induce appellee to believe, by said acts and his statements as to the said easy sales, that said commissaries were in great demand, and of easy and quick sale, by reason of which he was induced and caused to execute the notes in suit, and but for said acts and statements he would not have made said trade and executed said notes; that, after the execution of said notes, appellee ascertained that all of said acts and statements made by said Borders were false, and made for the purpose of inducing appellee to execute same; that no individual orders had been taken from certain persons (naming them), and from none of the others whose names were called over as parties who had made individual purchases of said commissaries, and that they were not of ready sale and easily disposed of; that by said means of said false and fraudulent acts, statements and inducements, this appellee was persuaded to and did execute said notes, and that the articles so purchased, and for which the notes were given, were of no value, and would not sell, all of which said Borders knew at the time, etc.

1.  Under the first paragraph of his answer, appellee seeks to defend against the notes upon the ground that the original payee had failed to comply with the provisions of the statute regulating the sale of patent rights. §§8130, 8131 Burns 1901, Acts 1899, p. 112, §§1, 2.

In the case of *People's State Bank* v. *Jones* (1901), 26 Ind. App. 583, 84 Am. St. 310, a paragraph of answer substantially like the one under consideration was held bad, but the contract which formed the basis of the action was executed before the amendment of the statute in 1899. The original act (§8131 Burns 1894, Acts 1869 (s.s.), p. 91, §2)

only applied to the intangible right secured by letters patent, and not to articles manufactured and sold under the patent.

Appellant insists that the case last cited does not correctly state the law, and urges that it should be overruled. We can not concur in that insistence, for the decision rested upon the statute as it existed when the contract was made, and was in harmony with the decisions of the Supreme Court. In a subsequent appeal of the case (*Jones* v. *People's State Bank* (1904), 32 Ind. App. 119), this court adhered to the former decision. We approve both decisions. See, also, *Hankey* v. *Downey* (1888), 116 Ind. 118.

The legislature in 1899 amended the original law, in a material respect, and the contract sued on here was executed since that amendment, and the sufficiency of the first paragraph of answer must be measured and determined by its provisions. The amended section is as follows: "It shall be unlawful for any person to sell or barter, or offer to sell or barter, any patent right, *the whole, any part thereof,* or any right which such person shall allege to be a patent right, or sell, barter, grant or license, *or offer to sell, barter, grant or license the right to manufacture, use or sell the patented article, whether either of said rights be exclusive or non-exclusive,* in any county within the State, without first filing with the clerk of the court of such county copies of the letters patent, duly authenticated, and, at the same time, swearing or affirming to an affidavit, before such clerk that such letters patent are genuine, and have not been revoked or annulled, and that he has full authority to sell or barter, *grant or license* the right so patented, *or any part thereof, and the right to manufacture, use and sell the patented article,* which affidavit shall set forth his name, age, occupation and residence, and if any agent, the name, occupation and resident [residence] of his principal. A copy of this affidavit shall be filed in the office of said clerk, and the clerk shall give a copy to the applicant, who

shall exhibit the same to any person on demand." §8130
Burns 1901, Acts 1899, p. 112, §1. "Any person who may
take any obligation, in writing, for which any patent right,
or right claimed by him or her to be a patent right, *or the
right of manufacture, use or sell the article so patented,
whether the said right, or either of them be by sale, grant
or license, exclusive or non-exclusive,* shall *form a whole
or any part of the consideration,* shall, before it is signed
by the maker or makers, insert in the body of said written
obligation above the signature of said maker or makers,
in legible writing or print, the words 'given for a patent
right,' *or 'given for the right to manufacture a patented
article,' or words which clearly state the consideration for
which the note was given."* §8131 Burns 1901, Acts 1899,
p. 112, §2. It will be observed that material provisions
are added to the statute by the amendment indicated by
italics.

The amended statute places an inhibition against the
sale or offer to sell, not only a patent right, but makes it
unlawful to "offer to sell, barter, grant or license the right
to manufacture, use or sell the patented article, whether
either of said rights be exclusive or non-exclusive," without
first filing the required affidavit. The amendments made in
1899 to §8131, *supra,* are very significant, and material in
the determination of the question we are now considering.
Formerly the statute only required that when any obliga-
tion in writing was given for a patent right, or a right
claimed to be a patent right, before it was signed by the
maker, should be indorsed, "given for a patent right."
Now the statute is extended to the sale of the right to
manufacture, use or sell the article so patented, whether the
said rights, or either of them, be by sale, grant or license,
exclusive or non-exclusive, shall form a whole or any part
of the consideration, and requires the additional indorse-
ment, "given for the right to manufacture a patented
article," or words which clearly state the consideration

for which the note was given. In this case the notes sued on, as averred in the first paragraph of answer, were given, not for a patent right, but for the right to "use or sell the patented article." Under the amended statute, the vendor had no right to make such sale, or to take written obligations therefor, without first complying with the provisions of the statute, by filing the required affidavit, and by indorsing on the notes, before they were signed by the maker, the words, "given for the right to manufacture a patented article, or words which clearly state the consideration for which the" notes were given. The paragraph of answer under consideration fully shows wherein the provisions of the statute were wholly ignored, and, measured by the statute, states a complete defense in bar. The demurrer to it was properly overruled.

2.    Appellant's counsel argue that the fourth paragraph of answer is bad, for failing to aver that the defense existed before notice to appellee of the assignment, and cite §§277, 7517 Burns 1901, §§276, 5503 R. S. 1881, and several authorities. Neither the statute nor the authorities are in point. The assignee of a note not payable in bank takes the same subject to all defenses existing in favor of the original payor. *Reagan* v. *Burton* (1879), 67 Ind. 347; *Sims* v. *Wilson* (1874), 47 Ind. 226; *Watts* v. *Fletcher* (1886), 107 Ind. 391; *Henry* v. *Gilliland* (1885), 103 Ind. 177. The sum and substance of this paragraph is that the notes sued on were executed without any consideration whatever. Such fact constitutes a defense in bar, and under the averment the defense existed from the date of the contract.

3.    The fifth paragraph of answer, to which a demurrer was overruled, sets up fraud in the procurement of the execution of the notes by the original payee. The paragraph falls very far short of being a model pleading, and the facts relied upon are loosely stated; but its general averments are sufficient to bring it within the rule declared in *Jones* v. *People's State Bank, supra,* and, upon the au-

thority of that case, we must hold that the demurrer was properly overruled.

4.   The remaining question for decision is raised by a proper assignment alleging error in overruling appellant's motion for a new trial.   Counsel for appellant urge that the evidence does not sustain the finding and judgment, and also that under the act of March 9, 1903 (Acts 1903, p. 338), this court is authorized to weigh the evidence.   It is sufficient to say, first, that there is some evidence in the record which supports the finding and judgment, and under the well-established rule in this State we can not disturb that finding.

5.   Second, appellant's counsel seem to have misconstrued or misunderstood the provisions of section eight of the act of 1903, *supra.*   More than that, in referring to the statute, they have misquoted it.   This, of course, was unintentional on their part; and, as they have quoted it in their brief, it does authorize an appellate court, in cases of this character, to award judgment according to the clear weight of the evidence, etc.   As quoted in their brief, the statute reads as follows:   "In all cases now, or hereafter triable by a jury, the Supreme and Appellate Courts shall, if required by the assignment of errors, carefully consider and weigh the evidence and admissions heard on the trial," etc.   They have omitted the very important word "not," preceding the word "now," for the statute is that "in all cases not now, or hereafter triable by a jury," etc.   This cause was triable by a jury, but, because a jury was waived and it was tried by a court, it does not make the statute applicable here.

The judgment is affirmed.